IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 17, 2004

## STATE OF TENNESSEE v. JAMES GARY TURNER

**Appeal from the Circuit Court for Bedford County**
**No. 15086     Lee Russell, Judge**

---

**No. M2003-03002-CCA-R3-CD - Filed February 11, 2005**

---

The defendant, James Gary Turner, was indicted for reckless endangerment, felony evading arrest with risk of death or injury, and driving on a revoked license, fourth offense. The State subsequently dismissed the reckless endangerment charge, and the defendant pled guilty to driving on a revoked license, fourth offense, a Class A misdemeanor, and was convicted by a Bedford County Circuit Court jury of felony evading arrest with risk of death or injury, a Class D felony. At the conclusion of the sentencing hearing, the trial court sentenced the defendant as a Range II, multiple offender to concurrent terms of eight years for the felony evading arrest conviction and one year for the driving on a revoked license conviction, to be served consecutively to his federal sentence for a prior conviction. On appeal, the defendant argues that the evidence is insufficient to sustain his Class D felony evading arrest conviction; the trial court erred in sentencing him to one year for the misdemeanor conviction; and the trial court imposed an excessive sentence for the felony evading arrest conviction. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee (on appeal), and Michael J. Collins, Assistant Public Defender, Shelbyville, Tennessee (at trial and on appeal), for the appellant, James Gary Turner.

Paul G. Summers, Attorney General and Reporter; Michelle Chapman McIntire, Assistant Attorney General; William Michael McCown, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

At approximately 11:00 p.m. on Sunday, January 20, 2002, Shelbyville Police Officers Christopher Jones and Bruce Davis saw the defendant run a traffic light at one of the city's major intersections. When the officers activated their patrol vehicle's blue lights and siren in an attempt to pull him over, the defendant passed a vehicle on a hill and accelerated from the officers, racing through residential neighborhoods at a high rate of speed and running a stop sign and two traffic lights before abandoning his vehicle in the driveway of his home, jumping a fence, and running off through some backyards. Approximately four to five minutes later, the defendant returned to his house where he was arrested by Officer Davis.

At trial, Officer Jones testified he was familiar with the defendant and recognized him when he saw him driving his vehicle on the evening of January 20, 2002. At about 11:00 p.m. that evening, he and his partner, Officer Davis, were patrolling in their marked police truck when they saw the defendant turn onto Derry Street and approach the intersection of Derry and Madison Streets as the light for Derry traffic turned yellow. As the officers watched, the vehicle in front of the defendant, which they later learned belonged to the defendant's girlfriend, Gloria Evans, went through the intersection on the yellow light. The defendant followed but did not start through the intersection until the light had already changed to red.

Officer Jones testified he and Officer Davis, who were approximately a car length and a half behind the defendant's vehicle, initiated their siren and blue lights to stop the defendant. Instead of pulling over, however, the defendant passed Ms. Evans' vehicle in a no passing zone on a hill and "floored it," taking off at a high rate of speed through a primarily residential neighborhood. Driving 50 to 60 miles per hour in an attempt to catch him, Officer Jones saw the defendant run the stop sign at the four-way stop intersection of Derry and East Franklin without appearing to apply his brakes or slow his vehicle. Continuing at the same high rate of speed, the defendant sped down Derry until he came to the intersection of East Lane Street, where the light was red. There, the defendant turned left without stopping at the red light, in the process spinning his vehicle around and almost wrecking. After regaining control of his vehicle, he accelerated down East Lane, turned right on Thompson Street, bounced across the railroad tracks and scraped the bottom of his vehicle, accelerated down Thompson, "blew the red light" at the intersection of Depot and Thompson as he turned left onto Depot Street, accelerated down Depot, turned left onto Hobson, pulled up in the driveway of the first house on the corner, which the officers later learned was his home, jumped from the vehicle, hopped over a fence into a backyard, and continued his flight on foot.

Officer Jones testified he parked his vehicle and took off running after the defendant, yelling, "Stop, police," but lost sight of him when he ran between some buildings. When he returned to the house, Officer Davis, who had remained behind to secure the defendant's vehicle, had the defendant handcuffed on the ground. Officer Jones testified the speed limit on East Lane was 30 miles per hour and estimated that the defendant reached speeds of 50 to 60 miles per hour or more as he accelerated down the street. He agreed that Madison was one of the busiest streets in the city and that Depot was also a "fairly busy street." In addition, he testified that several businesses located at the corner of Depot and Thompson made it difficult to see approaching traffic on Depot. On cross-examination,

Officer Jones acknowledged there had been no oncoming traffic at the time the defendant passed Ms. Evans and that his passing did not cause her to swerve or otherwise lose control of her vehicle.

Officer Davis corroborated Officer Jones's account of the defendant's driving, including his having run the traffic lights at the intersections of Derry and Madison, Derry and East Lane, and Thompson and Depot, as well as the stop sign at the intersection of Derry and East Franklin. He testified he acted as "navigator" during the chase, observing the cross-street traffic at the intersections and instructing Officer Jones on whether it was safe for them to proceed against the red lights. He saw traffic approaching the light at the intersection of Derry and Madison, one or two vehicles approaching on the right at the intersection of Derry and East Lane, within ten to fifteen yards of the intersection, and several vehicles fifteen to twenty yards from the intersection of Thompson and Depot, which had also been approaching from the right but had stopped to yield the right of way to their police vehicle. Officer Davis testified that four or five minutes after the defendant abandoned his vehicle at his house and ran off, he returned at a walk and inquired why Officer Davis was in his front yard and behind his vehicle, which still had its lights on and engine running. The defendant admitted the vehicle was his but denied he had been driving.

Officer Davis characterized Derry Street as a heavily traveled, main thoroughfare, Madison as the busiest street in the city, East Lane as a street with "[m]edium to heavy" vehicular traffic, Thompson as a street with "medium" vehicular traffic, and Depot as having a "[h]eavy" volume of vehicles. In addition, he testified it was common to see foot traffic "night and day" around the intersection of Derry and East Franklin, and foot traffic was "[p]retty regular" on Thompson Street. He acknowledged that he did not see any pedestrians during the chase, the streets were less heavily traveled late on Sunday evening than they were during the middle of a weekday, and there were no vehicles passing through the intersections as the defendant ran the red lights. He reiterated, however, that there were vehicles approaching the intersections at the time, and he expressed his belief that the warning siren and lights on their police vehicle had alerted other motorists to stop before entering the intersections. Finally, he acknowledged that no vehicles were approaching when the defendant passed Ms. Evans on the hill and that no one was run off the road or injured during the incident.

Gloria Evans, the defendant's girlfriend, testified on the defendant's behalf that the defendant passed her in his vehicle as she was stopped at the "next stop sign" following the intersection at Derry and Madison. She said the defendant did not come close to hitting her vehicle and was driving "maybe 40" at the time. She did not see any other vehicles or individuals in the vicinity who might have been endangered by his actions.

The defendant elected not to testify and rested his case without presenting any further proof.

At the sentencing hearing, the State introduced certified copies of judgments reflecting that the defendant had a 2002 conviction in federal court for distribution of cocaine base, 1994 convictions in Tennessee for theft of property under $500 and theft of property over $1000, and a 1980 conviction in Louisiana for armed robbery. The State also introduced the defendant's presentence report, which reflected numerous prior convictions from the age of twenty-four to forty-

eight for offenses including driving on a revoked license, driving under the influence, disorderly conduct, passing worthless checks, assault, and armed robbery. The report also stated that the defendant had "a history of probation revocations and failure to pay fines and costs in Bedford Co[unty]" and was on probation for driving on a revoked license when the instant offenses occurred.

The defendant testified, however, that the information contained in the presentence report was not accurate. Specifically, he asserted that not all of the assaults were his, and that he had not been convicted of robbery with a deadly weapon in Davidson County in 1978, as indicated on the report, but instead had pled guilty to a lesser, misdemeanor offense. Laura Prosser, the presentence officer for Bedford and Coffee Counties, testified she prepared the report by assessing the defendant's "prior record history" through "a direct [computer] hook-up to Metro." The information she obtained matched the defendant's name, date of birth, sex, and social security number. She acknowledged she did not look at the actual court files to determine if the information contained in the computer system was correct.

At the conclusion of the sentencing hearing, the trial court applied enhancement factors (2), the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the range, and (9), the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community, see Tenn. Code Ann. § 40-35-114(2), (9) (2003), to enhance the defendant's evading arrest sentence to eight years, the maximum in the range for a Range II offender convicted of a Class D felony. The court sentenced the defendant to one year for his driving on a revoked license, fourth offense, conviction based on the language of Tennessee Code Annotated section 55-50-504.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant first challenges the sufficiency of the evidence for his Class D felony evading arrest conviction. He concedes his actions constituted the offense of Class E felony evading arrest but argues there was no proof beyond a reasonable doubt that third persons were placed at risk by his actions. Thus, by his argument, the evidence was insufficient to elevate the offense to a Class D felony. In support, he notes that the only person the State specifically named as having been endangered by his actions, Gloria Evans, testified she was not placed in danger and did not see any other vehicles or pedestrians in the vicinity. He further notes that the State dismissed the reckless endangerment charge which named Ms. Evans as the alleged victim. The State argues that Officer Davis's testimony that there were vehicles approaching the various intersections at the time the defendant ran the red lights was sufficient to establish beyond a reasonable doubt that the defendant's flight created a risk of death or injury to innocent bystanders or other third parties.

Tennessee Code Annotated section 39-16-603(b)(1) (1997 & 2003) provides: "It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal

from such officer to bring the vehicle to a stop." When the flight or attempt to elude law enforcement creates a risk of death or injury to innocent bystanders or other third parties, the crime is elevated from a Class E to a Class D felony. Id. § 39-16-603(b)(3).

In considering whether the evidence was sufficient to support the defendant's conviction for Class D felony evading arrest, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Furthermore, a jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Viewing the evidence in the light most favorable to the State, we agree with the State that the proof was sufficient to show beyond a reasonable doubt that the defendant's flight from the officers created a risk of death or injury to innocent bystanders or other third parties. Officer Davis testified that traffic was approaching the intersections at the time the defendant ran through the red lights, including several vehicles that were within ten to fifteen yards of the intersection at Derry and East Lane. He further testified that the approaching motorists, alerted by the police vehicle's siren and flashing lights, had obviously slowed and/or stopped their vehicles as they neared the cross streets. From this testimony, a jury could have reasonably concluded that the defendant's actions in racing through red lights at major city intersections placed the drivers and passengers of vehicles approaching those intersections at risk of death or injury. We note there is no requirement that a defendant's actions create a "near miss" situation in which a third party motorist is forced to swerve or leave the roadway in order to avoid a collision, or that the third parties placed at risk be specifically named. See Tenn. Code Ann. § 39-16-603(b)(3); State v. Kerry L. Dowell, No. M2002-00630-CCA-R3-CD, 2003 WL 21486978, at *9 (Tenn. Crim. App. June 27, 2003), perm. to appeal denied (Tenn. Nov. 24, 2003) (concluding that officer's testimony that road was "busy" at time defendant drove onto it without stopping was sufficient to establish that he placed third parties at risk and, thus, that his flight from officers constituted Class D felony evading arrest); State v. Mario Ricky Orlando Printis, No. W2000-03032-CCA-R3-CD, 2002 WL 1482707, at *3 (Tenn. Crim. App. Feb. 27, 2002) (affirming defendant's conviction for Class D felony evading arrest on basis of officer's testimony "there were other cars on the road during the high-speed chase").

## II. Sentencing

The defendant next challenges his sentences, arguing that the trial court erred in ordering a one-year sentence for his misdemeanor conviction and in imposing the maximum sentence within the range for his felony conviction. The party challenging the sentence imposed by the trial court has the burden of establishing that a sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." Ashby, 823 S.W.2d at 169.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides, in part, that the trial court shall impose a specific sentence that is consistent with the purposes and principles of the 1989 Sentencing Reform Act. See Tenn. Code Ann. § 40-35-302(b) (2003). A misdemeanor sentence, unlike a felony sentence, has no sentence range. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). The trial court has great flexibility and discretion in fashioning a misdemeanor sentence. The sentence must be specific and in accordance with the principles, purposes, and goals of the 1989 Sentencing Act. Tenn. Code Ann. § 40-35-302(b); State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995).

### A. Driving on a Revoked License

The record reflects that the trial court based the defendant's one-year sentence for driving on a revoked license, fourth offense, on Tennessee Code Annotated section 55-50-504, "Driving while license cancelled, suspended or revoked," which provides in pertinent part that a second or subsequent conviction for driving while license cancelled, suspended, or revoked "is a Class A misdemeanor." Tenn. Code Ann. § 55-50-504(a)(2) (2004). The statute further states that a person who "drives a motor vehicle . . . at a time when the person's privilege to do so is cancelled, suspended or revoked because of a second or subsequent conviction for vehicular assault under § 39-13-106, vehicular homicide under § 39-13-213, or driving while intoxicated under § 55-10-401 shall be punished by confinement for not less than forty-five (45) days nor more than one (1) year . . . ." Id. Tennessee Code Annotated section 40-35-111 provides, by contrast, that the sentence for a Class A misdemeanor is "not greater than eleven (11) months twenty-nine (29) days . . . ." Id. § 40-35-111(e)(1) (2003). Furthermore, Tennessee Code Annotated section 39-11-110 states that "[a]ll violations of law which may be punished by one (1) year or more of confinement or by the infliction of the death penalty are denominated felonies, and all violations of law punishable by fine or confinement for less than one (1) year, or both, are denominated misdemeanors." Id. § 39-11-110 (2003).

Prior to a 1992 amendment, which changed the wording of Tennessee Code Annotated section 55-50-504(a)(1) and (2),[1] the statute provided that a person convicted of a second violation of the statute "shall be confined to the county jail or workhouse for not less than forty-five (45) days nor more than eleven (11) months and twenty-nine (29) days." Tenn. Code Ann. § 55-50-504(a)(2) (1988); see Tenn. Code Ann. § 55-50-504 (Supp. 1992). The overriding rule in statutory construction is to ascertain and give effect to the intention of the legislature. See Dunn v. Hackett, 833 S.W.2d 78, 81 (Tenn. Ct. App. 1992).

> In seeking to ascertain legislative intent, we must look to the entire statute in order to avoid any forced or subtle construction of the pertinent language. Accordingly, statutes "in pari materia" – those relating to the same subject or having a common purpose – are to be construed together, and the construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute.

Lyons v. Rasar, 872 S.W.2d 895, 897 (Tenn. 1994) (citations omitted). Accordingly, we affirm the defendant's sentence of one year for his conviction for driving on a revoked license, fourth offense.

### B. Felony Evading Arrest

The defendant also contends that the trial court imposed an excessive sentence for his Class D felony evading arrest conviction. As a Range II, multiple offender convicted of a Class D felony, the defendant was subject to a sentence ranging from four to eight years. See Tenn. Code Ann. § 40-35-112(b)(4) (2003). Under the 1989 Sentencing Act, the sentence to be imposed for a Class D felony is presumptively the minimum in the range unless there are enhancement factors present. Id. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of any applicable enhancement factors and then reduce the sentence as appropriate based on applicable mitigating factors. Id. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Id. § 40-35-210, Sentencing Commission Cmts.; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

As previously stated, the trial court applied both enhancement factors (2) and (9) to enhance the defendant's sentence to the maximum in the range. While enhancement factor (2) still applies, the opinion of the United States Supreme Court in Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), calls into question the validity of the trial court's finding and application of enhancement factor (9). In that case, the Court applied the rule in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a

---

[1] Among the changes effected by the new language was a denomination of a first offense as a Class B misdemeanor and a subsequent offense as a Class A misdemeanor. Compare Tenn. Code Ann. § 55-50-504(a)(2) (1988) with Tenn. Code Ann. § 55-50-504(a)(2) (Supp. 1992).

jury, and proved beyond a reasonable doubt."), to conclude that a criminal defendant's Sixth Amendment right to trial by jury encompasses the right to have the jury, rather than the judge, determine the existence of any sentence enhancements other than those based on facts reflected in the jury verdict or admitted by the defendant.  Blakely, 542 U.S. at __, 124 S. Ct. at 2536-38.

Applying Blakely, we conclude that the application of enhancement factor (9) was error, because the only proof of the defendant's history of failing to comply with a sentence involving release into the community came from the presentence officer's report.  In our view, however, enhancement factor (2) alone more than justifies the eight-year sentence under the circumstances in this case, in which the defendant's prior criminal history was so extensive.  Accordingly, we affirm the defendant's eight-year sentence for Class D felony evading arrest.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the defendant's convictions and sentences.

_____

ALAN E. GLENN, JUDGE